And we will call the first case. 16-1908 Technomatic S.P.A. v. Brian Cave. Good morning. May I ask, I'm sorry, both attorneys that are going to present arguments, step up and identify yourselves for the record. Sorry about that. Good morning. My name is Michael Rasek. I'm here for the Plaintiff Appellant Technomatic. Good morning. Peter Silverman on behalf of the Brian Cave Law Firm. All right. Each of you will have about 15 minutes to present your argument. And from that, Mr. Rasek, you may save out some time for rebuttal. Two minutes, I think, is all I need. Okay. All right. Thank you. Good morning, Your Honors. Good morning. As I said, Michael Rasek. I'm here on behalf of the Plaintiff Appellant Technomatic. This is the case in which the circuit court granted summary judgment on our declaratory judgment action in which we seek to find that the arbitration agreement in the client retainer agreement is unenforceable because it is both unconscionable and against public policy. Could I ask you just a couple of things just before we get started to maybe focus in on? Certainly. In your reply brief, it does appear that you are arguing unconscionability, but primarily on the basis of this borrowing of discovery. Correct. And that the issue of the confidentiality is sort of off the table. It is. That's not part of our case. And you're not arguing that leave to amend the complaint was erroneous? No, not at all. Just focusing on the – and what about – so you're arguing primarily that the borrowing of discovery is really the strong issue here. That's the strongest point that we think that we have. If I was before your honors on a retainer agreement that simply said mandatory arbitration, I can make the same arguments that I'm making with the no discovery clause. But I believe that the no discovery clause in this document is what sets it apart from any other case that anybody has looked at. And the reason is the reason that I hopefully have provided clearly in our brief. And that is, well, there are obviously all the cases out there where mandatory arbitration has been approved. And there are even cases out there where they've approved mandatory arbitration with no, no discovery clause. But they're not law firm cases. And our whole point, and I hope it came through, is that Kinko, the Supreme Court, K-I-N-K-L Supreme Court case, you look at the circumstances of the matter. And one of the circumstances here is that you have a law firm that's involved. As soon as you have a client in a law firm, you have a fiduciary duty. And once you have a fiduciary duty, you don't have the normal relationship. The burden on the law firm is way, way higher. It's been described in different ways in different cases. And nobody disagrees in this case that there is a fiduciary duty. I think one case out there says you need to put the law firm in the shoes of the client. And would the law firm have done the same thing if they were in the shoes of the client? Would they have put in a no discovery clause? Of course not. Any lawyer who looks at this case on the client's side would say if there's a no discovery clause, how is the client ever going to prove their case? They can take a shot at it. Was there an offer, though, in the trial court to basically open up the files, give you, or the client, rather, every single file? They agreed to give the client, Technomatic, their files. Would there be anything more than the files that you'd be looking for or the attorney would be looking for in terms of discovery? Yes. What would that be? Two things. We would be looking for any internal, in terms of documents, we would be looking for any internal correspondence with the firm. Three things. Internal correspondence within lawyers within the firm. Potential correspondence between the firm and the underlying defendant in the case, the people that we were in litigation with. And the third thing was, and probably the most important, we need to depose the lawyers involved to find out why they did what they did because we are going to run into the judgment call. And making a mistake, as we all know, the audience has seen these cases, a lawyer or a doctor making a mistake is not wrong. It's not error. It's not malpractice. I have to prove to a jury that there was an error in judgment, and it has to be a significant error. It's got to be an error that violates the standard of care, and I don't see how we're going to be able to prove that. We're surely going to make an effort if we lose this case, but it's going to be so much more difficult to prove a violation of the standard of care. If I don't get to ask the other side, why did you do what you did? Explain these hours. Explain why you did not do this. Because for all I know, it's going to have to be. I'm sorry. So if they were going to turn over their files, you listed three things. You said internal correspondence within the firm. Correct. Potential correspondence between Brian Cave and opposing counsel and taking depositions of attorneys. Correct. The second one, potential correspondence between the law firm and opposing counsel, that would be in the files they were going to turn over, right? Counsel would have to answer that question. I don't recall that that was specifically part of the offer of turnover. I just don't remember the answer. I suspect my opposing counsel will know the answer to that specifically. In terms of deposing attorneys, it's one thing to say that Brian Cave might have documents that you'll never see. So you go to arbitration, you don't even know what you don't know. With the attorneys, it may be true that you can't depose them in advance, but you can examine them in the arbitration, right? You can ask them anything you want. We can. I mean, obviously in civil litigation, we like to depose people first so we know the answers to the questions. So that way you'll be depended, but you do have the ability to question them, right? We could. We could go back to pre-discovery days. That's how we tried cases. I put somebody on the stand and said, so tell me what happened, and I had to be on my feet. The problem with that is in order to win the legal malpractice case, that's not enough. I need to have somebody testify that they violated the standard of care. That has to be an expert witness. The cases are adamant that I need to have an expert on my side say they violated the standard of care, whether it's their hours or their tactics, and my expert can't do that without having that information in advance. Is that a fact? Are you suggesting, I mean, it seems like there's a suggestion here that you're not sure what the legal malpractice is, you want to discover it. Is that the whole problem with this case is that it's not supposed to be an expedition to determine whether there's a legal malpractice action? That was their argument. No, we know what the malpractice is. It will be in the underlying complaint if we can go to court, or it will be in the arbitration. Was there any... I'm sorry. It's not in the record, but was there a judgment entered against Technomatic in any of the underlying suits? No, the case was... Settled. Everything was settled. That's correct. For $32 million. That's correct. I believe that's a number. If you think the court, they sued us, so to speak, and Technomatic found out that they stole things, they sued them back. Yes, and they won. We prevailed. Right, on the counterpoint. Exactly. Let me ask you this, which really disturbs me in this case. There was no affidavit filed by your side in the motion for summary judgment that showed any legal malpractice? No, that's correct. Wait a minute. I'm sorry. Go ahead. So based on that, what you want to do is you want to go on a fishing excursion to see whether there was any malpractice? No, not at all. We can file that complaint tomorrow, Your Honor. I know exactly what's going into the complaint. Then why in the trial court would you not file an affidavit to show what evidence you have of malpractice which would require further discovery? Because that wasn't an issue in the trial court. No one contested in the trial court that we would not be able to... The motion for summary judgment was not based upon the concept that plaintiff Technomatic could not prove legal malpractice, so there was no need to go that route. I think that there is, but the question becomes this. Can we take the arbitration clause and find that to be valid and just remove the discovery? Do we have that power? That is their request, and I have to agree. This court has that power. But you were opposing it in your brief. Yes, we opposed severing it. Given our druthers, we would obviously want the entire clause dropped. As a position, I said there might be if this court can take further action, it might be appropriate. In order to sever it, there's the three-step criteria in Kinko. You can only sever it if the arbitration requirement does not depend on the no discovery clause to achieve its result. Kinko called it efficacy, and I translated it into that phrase. The no discovery clause must be very important to the entire clause, or we would not be here fighting so hard about this. The firm insists that the no discovery clause is an essential part of its whole arbitration clause, so that part of Kinko falls. Kinko said you can look at whether or not the document contains a severability clause. They drafted it, not us, and there is no severability clause. That surely weighs in our favor. And the final point of Kinko was that you can sever it, or you probably should sever it, if public policy is better fulfilled. In other marketplace cases involving these kinds of clauses, both sides stand on equal footing. There's only one public policy in those cases at issue, the policy that favors arbitration. When you get to this case, we've got a competing public policy, which is the fiduciary duty policy, which is the fiduciary duty that says this firm has a different duty. And I argue that that negates those two things. You have the public policy. Well, aren't you then saying basically you really can't ever have an arbitration clause if there's a law firm involved? No, not at all. I would never say that. Then aren't you really arguing for procedural unconscionability, that these things should have been worked out in advance? Not at all, because procedural unconscionability raises a different question. We have entered into this contract. That's not where we're headed. The only question, and Castillo and Hodges, the two New Mexico and Louisiana cases I cited, they looked at procedural. They found it was substantively unconscionable. Well, I think that's kind of blurred in those cases. I think it's really a procedural. It's blurred in every case. And I agree, it's blurred in every case. The difference between the two seems, once you start thinking about it, it's a hairline. The bottom line is that there is a way, the courts could find that there is a way that you can have an arbitration clause in an attorney-client agreement. I think you do that if you do the other things, the things they didn't do. That's why we have to negate the things they did do. What do the cases say when you have these two public policies conflicting? I'm not aware of a case that has balanced these two public policies. There is a strong public policy in favor of arbitration. And I would answer that with, there's an incredibly insistent public policy that lawyers owe a fiduciary duty to their client, and that's a high duty. People forget how high our duty is to our clients. You can't do anything that would be untoward or adverse to your client. And putting a clause in a document that says that the client is going to have a hard time seeking recourse is adverse to your client. That's a violation of your fiduciary duty. Well, shouldn't that be an issue that the arbitrator should decide first? Not if it should not be an arbitration. Then we get the circular thing. Our point is that it doesn't belong in arbitration. Well, if the case goes to arbitration, then the jurisdiction would be on the arbitrator to make that decision. And then if the arbitrator made a decision, then that could be reviewed by this court. But if it goes to arbitration and we're correct, and if the court takes out the no discovery clause, we're going to avoid this problem because we'll have a discovery and we're going to know, if I have the question right, if we have a discovery, we're going to know whether our beliefs are in fact provable. Yeah, but aren't there a number of cases that hold that if a case goes to arbitration first, the arbitrator has to decide those type of issues as to whether there should be discovery or no discovery? There are cases that put the burden on the arbitrator to do that. But that's not a defense that was raised here. That's why I've taken a little bit of back. They never argued below that this should be something that the arbitrator should have taken a look at. And the reason for the declaratory judgment is if it's unconscionable, that should be a question of law for a court. That's an attack on the entire agreement. When we talk about substantive unconscionability, which is what you're arguing, yes, the description of that is that the terms, the contract terms, are so one-sided as to oppress or unfairly surprise an innocent party and overall imbalance in the obligation and rights imposed by the party and significant cost price disparity. So here we have a provision that actually is imposed on both sides. Do we not? But not equally. That's the problem. On its face, I agree, on its face, a provision is spatially benign. Once you start to drill down and you look at what's going to happen when one side sues the other, one side can prove they can sue us for fees and they'll leave me information. But you want to sue them for the fees and for legal malpractice, right? There's a dispute about the fees and a dispute about the conduct. That's correct. So if a law firm wants to sue about the fees, they don't have the discovery either? Any discovery? The point is they don't need the discovery. In order to prove their case, they know how much time. They know in advance they can give their expert witness if they need one, the information about the fees. They can be their own expert. I cited the case. They can be their own expert on the time they put into the fees. The client can't be his or her or its own expert. They need an expert witness. What was your argument in the briefs as to why we shouldn't sever if that were an option? For the reasons I said, because there's a competing public policy agreement, because this no discovery clause is, at least according to them, very important to the whole document. And if a clause is intrinsically connected to the rest of that clause, as the no discovery clause is to the arbitration clause, then arguably it's not severable. But if we granted that kind of relief, how do you argue there's a problem with arbitration? If we say we're striking this provision, it all goes to arbitration. At that point, then I have to go back to the end. That is, Your Honor, put your finger on one of the problems I knew I would have when I came in here. I knew when I drafted the brief. We don't have a case on a specific point that really guides the court either way. No, but if we were to give that relief, how are you hampered in any way? Because your only claim here is the discovery, the barring of discovery. Well, our complaint is broader than that. Our original complaint argued that the entire arbitration clause should be out, should be unenforceable, not just the no discovery clause. It's a two-step process. But what theory or what case would you suggest to us today to throw out the whole thing? The two from New Mexico and Louisiana, those are the most instructive cases that I can find. There's no other case on point. You don't think a law firm can sign an agreement with a client ever with a no arbitration clause? No. I think it's possible to set up a scenario where that could be done and done adequately. I think it's described in Castile. It said if you do these things in your agreement, you can probably have an arbitration agreement and maybe even a no discovery clause. But without those things, the document is out of place. What are these magical things that need to be in it? The client needs to understand specifically, the document has to tell the client specifically, this is what this means. And the court said that clients don't understand the process. Are you arguing with something, though, now, Mr. Rasnack, that's really not in these briefs? No. You're saying somewhere in here, you're saying that these things should have been included? Is that somewhere in here? No, I'm answering the question that's here. I'm answering the question, what could we do to make it okay? I mean, what could the law firm do to make this document enforceable? And in answering that question, they could do the things that the court listed in Castile, which is clearly tell the client what's going on. Sure. But that does get into the area of procedural unconscionability, right? Which you're not arguing. Justice McBride mentioned that. When you start to talk about the cases and you look at them, procedural is entering into a contract. We have a binding contract here. The contract as a whole is not binding. What we're doing is attacking one clause in the contract. Don't we look at the whole contract, and don't we still consider contract provisions and interpretation of a contract under general contract principles? That's one of the guiding lines that the court has. But in this case, there's nothing in the rest of the contract that we entered into that the court needs to look at. Nobody has pointed to anything else in the contract. We're just focused in on this one clause. Yeah, and there really isn't any case out there that says, barring discovery, in other arbitration cases that there's any problem with that. One of the points of arbitration is to get rid of all these costs and expenses of litigation and have a decision rendered outside the courthouse. And in terms of the law firm, the best thing in terms of expediting this case is to put a clause in that stops it cold before it starts because we're very likely to have a hard time proving our case. That's our point. Other than that, unless the court has further questions, I'm way beyond my time. All right. Thank you. Thank you. And we'll give you some time for rebuttal. Mr. Silverman. Good morning. Again, I'm Peter Silverman. I represent Brian Cave, which is the defendant appellee in the case, along with my colleague, Lisa Mazzoni. Many of the questions that were asked of opposing counsel, the central issues in the case, the procedural versus the substantive unconscionability is a key issue and gets into issues of waiver. Because – But I kind of asked Mr. Astec that at the beginning so we could avoid kind of a repetition of your response to their brief. And so I think the argument that's central here is that barring discovery is essentially giving one side an advantage over the other here because the client can't really delve into the things that they would need. Yes. I believe that there's a concession by Technomatic that a no-discovery provision in arbitration is enforceable. It's not unconscionable in a commercial setting, but that it is unconscionable with a lawyer in a client setting. I believe that that's their position now. And our response is that if anything, in a lawyer-client setting, a no-discovery provision is less potentially problematic or burdensome because of the ethical obligations that lawyers have with respect to providing information to its clients. There is a provision actually in the retention agreement that has not been highlighted that talks about retention of files. And it says in there that the firm will retain files for 10 years, will not destroy them, and that they're available for the client. So I think there is an expectation that the client understands that it's entitled to information. And the documents and information were offered. They were tendered not to be misappropriated because it was an obligation to do so. So there are a million pages of documents that are available, including the correspondence with opposing counsel, which I believe, and it's the position we've taken, belongs to the client. They've paid fees. There is an outstanding issue, but in terms of depositions, deposition transcripts, the underlying pleadings that correspond for the opposing counsel, all of that information belongs to the client. Now, in a commercial setting, that's not the case. So it is possible in a commercial setting that one side or the other has literally nothing to go on. Why didn't you mention this in your response brief, or do you? We do, Your Honor. I mean, you mentioned briefly, but you don't really go into the detail that you're doing now. Everything you have is actually required to be given in the event of a request, and you keep everything for 10 years. Yes, and, in fact, that was – I didn't mention about the provision in the agreement, but we did go into some detail about what was available. And Judge Panley referenced it in her summary judgment ruling. There's materials that were provided where we had a back-and-forth with opposing counsel. We offered the materials. We said it's available, and there's a back-and-forth without characterizing it, but they did not ever seek it out and did not – Isn't there a valid argument here that in an attorney-client relationship, when we're looking at an arbitration provision, that we should give it a little closer look than a commercial transaction? I believe that that is the case. I think so, but I believe in this case, given the complaint in this case, the answer is no, because there is no suggestion – there's no allegation, but even a suggestion that in the formation of this agreement, the client didn't understand it or couldn't read it, procedural-type issues. That's where you get into a lawyer's duty to disclose and communication under the ethical rules 1.4, which is the rule that is the foundation for all the cases that are cited in this 1.4. Do you have a duty as a lawyer to inform the client? Is there informed consent? That is not something they ever alleged in their complaint. It's not addressed by the court below. Rule 1.4 was not addressed at all because it's not in their complaint. It was never raised. It's not something that they have ever asserted. Now, if they did, then I think it is very important that courts look at what was disclosed to the client at the time to confirm that the client understood. But what would you say was disclosed here, other than that this is subject to arbitration and there will be no discovery and everything must remain confidential? Well, that there's three arbitrators, that each party picks an arbitrator, and the two party arbitrators pick the third, Illinois law governs, and that the arbitrators determine the rules of the arbitration other than the discovery issue. How do you distinguish those out-of-state cases that counsel has cited? They are certainly something we can look at. We're not bound. I believe you can look at them if the complaint, if they haven't raised these already. The Louisiana case and the New Mexico case are founded on Rule 1.4, and a lawyer's obligation to communicate to a client. The informed consent issue, which I think counsel has said is not part of this appeal, and it shouldn't be because it was not considered by the courts below, by Judge Morton or by Judge Penley. It was never addressed. But did they argue in the trial court if there was a violation of the Code of Professional Conduct? Did they specifically reference the two paragraphs? They did not reference Rule 1.4, which is the key. They referenced Rule 1.5, which they've abandoned, which has to do with fees and fair charging of fees. They've dropped that. And then Rule 1.8H, which has to do with an agreement that prospectively limits a lawyer's potential liability. And with that, actually, in the comments, I think it's comment 14, it states that these type, well, that arbitration agreements with lawyers and clients are not unethical. But it talks about the need to inform the client, to properly inform the client. So, again, if that was an issue in the complaint or in the arguments and summary judgment, then it would be something that would be pertinent, I believe. Did they argue in the lower court malpractice, legal malpractice? What they have said is simply that they believe they have claims to assert, and they want to have them adjudicated in a court and not in arbitration, and that they would seek to invalidate the arbitration provision so that they can proceed. Well, a lawyer has a duty, besides the sections that you're talking about, not to deviate from a certain standard of care in the handling of a matter. Would you agree to that? Yes, absolutely. That's a standard of care. Absolutely. And a breach of that standard of care is what we call legal malpractice when there's damages. Would you agree to that? Yes. Okay. Now, in order to prove that, in order to prove that, the only way a client could ever prove that is through discovery, because you have to know why a lawyer took a certain strategy in a case. I don't agree with that at all, Your Honor. I believe, well, personally, I think documents are much more important than depositions. I think personal depositions are more important. Well, maybe they are, but I never have seen in my many years a case of legal malpractice where people haven't taken depositions of who they claim the offender is. I believe that, ordinarily, in a courtroom setting, there are rights to discovery and depositions are taken regularly, and there's a trade-off in proceeding to arbitration, which is a much quicker process, a much more cost-effective process, in the formalities of litigation in certain cases. Well, I don't disagree with that at all, but the problem is that when you enter into an agreement with a client, you know, you have a number of duties, and the duty is to follow the standard of care. If you're charging, I mean, we're talking about charges here They were in excess of a million dollars, weren't they? The fees? Yeah. They are alleged to be $12 million. You're right. So we're talking about a sufficient sum of money for billing and a claim of malpractice. I don't know what the claim is, but certainly a client should be able to find out. I would just say that, in some ways, I think there's a contradiction in the position taken by the other side. They say they could file a lawsuit tomorrow, and to be able to do that in accordance with the ethical rules, they have to have a good faith basis to do it. Right. They have access to all the documentation, and I believe regularly in legal malpractice cases, an expert will give his or her opinion based on the facts and circumstances in the record. This case went on for, I believe, eight years. I don't know specifically what in the case that they're going to point to, but they have enormous amounts of information available to them, and I take it from the argument earlier about opposing counsel. They want depositions. That's really what it boils down to, and so it's not simply that they have access to the written record. They want to take depositions, and the question is, is it unconscionable to not allow depositions in arbitration in a legal lawyer-client context? And I believe the standard there is, is it so one-sided to be oppressive? And I just don't see how it is. They could file a lawsuit tomorrow. Therefore, they disagree that the discovery is necessary or essential to have these claims. It may be helpful to them. It may hurt them. They may take the deposition of the people that they claim did these things wrong, and it could be a disaster for them. You don't know until you go through the depositions. You've got good ones. You have bad ones. Is it one-sided in the sense that on the fee issue, there's no discovery for either side? But what about the malpractice issue? I do think that it is theoretically possible. You could have a case where it would be harder to prove legal malpractice without depositions. There are some cases where it would be hard to defend legal malpractice cases without depositions. Well, give us an example. Why would it be so hard to defend? Well, and I'm not saying that this is in every case, but as an example, if, and this comes up periodically, a lot of the legal malpractice cases, as soon as someone blows a deadline, you miss a statute of limitations. And so you have questions about when the statute of limitations started to accrue, when the client knew or should have known about certain facts. And that is a fairly common scenario in my world. So it's not so as one-sided as one might think? I don't believe it's one-sided. I do think that you could point to theoretical situations where it would handicap a client not to have depositions. I think in other instances it would handicap the lawyers, and I think in most cases it wouldn't handicap anybody. And I think under that, given that, it doesn't meet the standard of being unconscionable because it's oppressive. It's just not oppressive. Did you also suggest in the trial court that rather than throw out the whole arbitration clause, this idea of separability was not something you would be adamantly opposed to? I mean, in your brief you suggest that as an alternative, remove that barring discovery provision, but remain with the clause requiring arbitration. Yes, Your Honor. Our position is that the term is not unconscionable, but if it's found to be, that it should be severed from the arbitration provision. And I believe the law is clear that that is what should take place where the term that's being severed is not essential and that the real objective here is arbitration. That's what the provision is there for, and it has all this information in there about the arbitration and one term about discovery that is not essential to the arbitration process. I don't think that there's a reasonable argument to the contrary. I think that it should be severed if it's found, if this provision is found to be unconscionable. What is your position regarding the two public policies that are at play here? Is one more significant than the other? What do courts do when they have two public policies that they have to look at? Is the fiduciary relationship more significant than the strong public policy in favor of resolving cases by arbitration? I do not believe there's a balancing in this case. I think there would be a balancing if they took the position below that there was a lack of informed consent. Then I think there would be a balancing. I don't believe that this fiduciary duty comes into play in this case based on what was alleged and based on what was decided by the judges below. And I would just point out that there are findings. There was a denial of a motion for leave to amend, and there was findings during the summary judgment hearing where the court said you cannot get into these issues with Judge Martin. It was in part because of the sanction because of the failure to follow his orders. They do not appeal. Technomag does not appeal from those findings. So you have then final non-appealable rulings that are directly inconsistent with the argument that this court should balance fiduciary duty public policy where it was, again, not in play. It was not something that the court below considered. You won't see in her court's ruling anything about balancing public policies. That argument was not made, or about the fiduciary duty rule 1.4. But the rules, the predicate for these, the Louisiana case, the New Mexico case, and the general arguments about a lawyer's obligation to inform a client properly before entering into an engagement agreement are not preserved for appeal and were not raised. Do you believe those two out-of-state cases are procedural unconscionability at their essence? Yes, absolutely. They are. They relate to the formation of an agreement, whether an agreement is understood. And that is classic procedural unconscionability. So unless your panel has any questions, thank you very much. I appreciate it. Thank you. Mr. Raschak, briefly. I understand. Very briefly. I think I just had two points. Just to reemphasize, Judge Ellis talked about what could occur during an arbitration hearing. Our expert in a legal malpractice case would need the information ahead of time to testify. And if we actually went to a procedure where an arbitrator allowed our expert to sit in on the hearing and then make up his mind as to whether or not what he heard from the witness stand was, in fact, evidence of malpractice, the whole idea of having an expedited process would pretty much disappear. Now we have to continue that hearing, have the expert look at that testimony, look at the records. I think that's why the expert is so critical. Needing an expert is so critical here. But in a lot of malpractice cases, plaintiffs are required to have affidavits of experts when they file their lawsuit before there's been any testimony, right? So they're doing that without discovery. They're doing that based on documents. Exactly. And that was my other point. Many, many lawsuits are filed in good faith based on the documents and the knowledge you had. The problem is they're not provable based on that. I mean, we don't prove our case in our complaint. Those affidavits in medical malpractice, we have the 2622. Those don't prove your case. Your expert's got to prove your case. And in an arbitration, just like in a trial, we still have to prove our case. Sure, but is there something inconsistent with your argument that we could file a malpractice case tomorrow? We have the allegations. We know where the malpractice was. And then you have an expert that agrees with that. I don't know. Isn't there some inconsistency? Not at all. You could go to arbitration with this malpractice. If it's there, it's already there, you said. It's the same thing that occurs in a medical malpractice case. We have an expert. We have a doctor. Look at the medical charts. And he said, I think this is probably medical malpractice. But that opinion always needs to rest upon what the doctor's given certain reasons. His opinion could be destroyed overnight by something on the other side, which is what could happen here. I mean, Counsel's right. We could proceed into this case and find out that they have a good reason for everything they did. But as of this moment, we've got enough to move forward in a court of law. But to prove our case, we need some more. That's really the point of our argument in our case. I think that's the trigger to this case. Unless, of course, there's further questions, I know we're way past our time. Thank you very much. All right. Case was well-argued, well-briefed. It will be taken under advisement. We're going to take a short recess to change panels for the next two cases.